Grant ANDERSON a/k/a Jibril L. Ibrahim, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CO–1141.

District of Columbia Court of Appeals.

Submitted Jan. 5, 1999.

Decided June 8, 2000.

---

Grant Anderson, pro se.

Elizabeth H. Danello, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, and Thomas J. Tourish, Jr., Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and REID, Associate Judge, and MACK, Senior Judge.

WAGNER, Chief Judge:

Appellant, Grant Anderson, a/k/a Jibril L. Ibrahim, (Anderson) appeals from an order of the trial court denying his motion seeking recusal of the trial judge from further post-trial proceedings in his case. The trial court denied the motion, concluding that Anderson failed to state adequate grounds for granting it. We affirm.

## I.

Anderson was convicted of assault with intent to commit rape while armed, assault on a police officer while armed, and two counts of first degree burglary while armed. His convictions were affirmed on appeal in an unpublished opinion on February 28, 1990, with instructions to the trial court to vacate one of the burglary

convictions on double jeopardy grounds.[1] Thereafter, Anderson filed numerous post-trial motions *pro se*.[2] Among these motions was an "Affidavit for Disqualification or Recusal of [Judge Reggie Walton]" which Anderson filed on August 8, 1994. Judge Walton denied this motion, concluding that Anderson had "fail[ed] to articulate adequate grounds for granting the requested relief." *Anderson, supra* note 2 at 809. Anderson filed a second affidavit seeking the disqualification or recusal of Judge Walton on May 5, 1997, which the trial court denied on May 19, 1997. Anderson noted an appeal from this ruling. Subsequently, the trial court entered an order disposing of various other post-trial motions filed by Anderson. In that opinion and order, the trial court again denied the second recusal motion for lack of adequate grounds, noting that it was essentially the same disqualification motion as the first. *Id.* at 810.[3]

## II.

Preliminarily, the government argues that this court lacks jurisdiction to hear Anderson's appeal from the denial of his recusal motion because it is taken from a non-final order, and therefore, not appealable. With certain exceptions, not here pertinent, this court has jurisdiction only over appeals from "all *final* orders and judgments of the Superior Court of the District of Columbia." D.C.Code § 11–721(a)(1) (1995) (emphasis added). This court has "no jurisdiction to entertain an appeal from a non-final order, and consent of the parties cannot enlarge [the Court's] jurisdiction." *Burtoff v. Burtoff,* 390 A.2d 989, 991 (D.C.1978) (other citation omitted). An order denying recusal is interlocutory, and therefore, not appealable. *Nichols v. Alley,* 71 F.3d 347, 350 (10th Cir.1995) (citing *Lopez v. Behles (In re American Ready Mix, Inc.),* 14 F.3d 1497, 1499 (10th Cir.), *cert. denied,* 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994)); *Association of Nat'l Advertisers, Inc. v. Federal Trade Comm'n, et al.,* 201 U.S.App.D.C. 165, 171 n. 9, 627 F.2d 1151, 1157 n. 9 (1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980).[4] "To be 'final' under § 11–721(a)(1), an order must 'dispose[ ] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered.'" *Camalier & Buckley v. Sandoz & Lamberton,* 667 A.2d 822, 825 (D.C.1995) (citing *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 36 (D.C.1979) (further citations omitted)).

The government contends that disposition of Anderson's recusal motion did not end the litigation in the trial court because a number of post-judgment motions remained pending. However, subsequent to the filing of Anderson's appeal, the trial court disposed of Anderson's vari-

---

**1.** *See Anderson v. United States,* No. 88–1522 (D.C. Feb. 28, 1990).

**2.** According to an opinion issued by the trial court on January 26, 1998, "[i]n addition to his direct appeal, [Anderson] filed over forty-four *pro se* motions in the Criminal Division of [the trial] court." *United States v. Anderson,* 126 Daily Wash. L. Rptr. 805 (D.C.Super.Ct. Jan. 26, 1998).

**3.** In a footnote to his opinion, Judge Walton recounted two prior efforts by Anderson to have other judges disqualified from hearing his cases, namely, Judge Shuker and Judge Cushenberry. *Anderson, supra* note 2, at 805 n. 14.

**4.** "Although a refusal to recuse is not appealable as a final order, commentators have detected a liberal trend toward use of mandamus to consider disqualification claims." *Association of Nat'l Advertisers, supra,* 201 U.S.App.D.C. at 171 n. 9, 627 F.2d at 1157 n. 9 (citing 13 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3553, at 387 (1975); 9 MOORE'S FEDERAL PRACTICE 110.13[10], at 187–88 (2d ed. (1975))). In fact, this court has recognized that where a trial judge should recuse, but declines to do so, a writ of mandamus is the appropriate remedy. *Scott v. United States,* 559 A.2d 745, 750 (D.C.1989) (en banc). Anderson did not seek a writ of mandamus in this case.

ous pending motions, including once again Anderson's second recusal motion, in its order of January 26, 1998. *See Anderson, supra* note 2 at 805. Thus, Anderson's notice of appeal prior to that time may be regarded as premature. We have held that jurisdiction of a prematurely filed appeal "will lie in this court only if the trial court, by the time of our disposition of the case, has in fact ruled upon the pending motion 'since the required further action by the trial court [has] in fact been performed by that time.'" *Carter v. Cathedral Ave. Coop., Inc.*, 532 A.2d 681, 683 (D.C.1987) (citation omitted). Therefore, on the particular facts of this case, we consider the merits of Anderson's claim, which has been briefed on appeal by the parties.

### III.

Anderson argues that the trial court (Judge Walton) abused its discretion in declining to recuse itself from further proceedings in his case. He contends that disqualification was warranted because the judge: (1) had been named by Anderson as a "co-conspirator" in litigation pending in the United States Court of Appeals for the District of Columbia Circuit (No. 93–7116); (2) was seeking the position of U.S. Attorney; (3) delayed action on Anderson's *coram nobis* petition; (4) provided unconstitutional and impermissible jury instructions in his trial; (5) adjudicated his petition for writ of habeas corpus tendered to the District of Columbia Court of Appeals (No. 95–CO–1298) challenging appellate delay in criminal proceedings; (6) improperly accepted jurisdiction of habeas corpus tendered to the "Special Proceedings Branch" of Superior Court in case No. 98 SP 43; (7) castigated Anderson at his sentencing hearing; and (8) at a time when he was no longer a judge, ruled on a motion filed under D.C.Code § 23–110 (1995) and for disqualification of Judge Cushenberry.

The Code of Judicial Conduct, which is applicable to judges of the Superior Court, provides in pertinent part that "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned...." ABA CODE OF JUDICIAL CONDUCT Canon 3(C)(1); *see also Scott, supra* note 4, 559 A.2d at 748 & n. 6 (citations omitted). This canon has been interpreted to require a judge to recuse from any case where there is "'an *appearance* of bias or prejudice sufficient to permit the average citizen reasonably to question [the] judge's impartiality.'" *Id.* at 749 (quoting *United States v. Heldt*, 215 U.S.App.D.C. 206, 239, 668 F.2d 1238, 1271 (1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982)). Thus, in *Scott*, this court held that it is a violation of Canon 3(C)(1) "when the trial judge who is presiding at the prosecution by the United States Department of Justice through the United States Attorney's Office is actively negotiating for employment with the Department's Executive Office for United States Attorneys." *Id.* at 750.

Anderson seeks to bring his challenge within the rule set forth in *Scott*, contending that Judge Walton "was negotiating employment with the Department of Justice" while presiding over his case. The record does not bear out Anderson's claim. In support of his disqualification argument, Anderson stated in the trial court that Judge Walton "may be considering a position ... as the United States Attorney for the District of Columbia...." Anderson's claim that Judge Walton *might possibly* consider the position was based upon a news article in the Washington Post, captioned "Contest to Succeed Holder is Wide Open."[5] According to the article, President Clinton had announced a month earlier that he would nominate Eric Holder, who was then United States Attorney, to be Deputy Attorney General and that the President had asked the District's Delegate to Congress for recommendations. The article also stated that the

5. WASH. POST, Apr. 14, 1997, at B3.

Delegate used a 17–member commission to screen candidates. Nowhere in the article does it say that Judge Walton had either applied for, or was seeking the position. Rather, the article stated that

> In recent weeks, several *potential* candidates have emerged, sources said. D.C. Superior Court Judge Reggie B. Walton, a former top-ranking D.C. prosecutor who was a deputy "drug czar" in the Bush administration, *has been mentioned* frequently.

(Emphasis added). An account in a newspaper that unnamed persons frequently mentioned a judge's name as a *potential* candidate is not a sufficient reason to require the judge to recuse for actual impartiality or the appearance of impartiality. Here, there is not even a hint that Judge Walton had sought, applied for, or negotiated with anyone for the position. Ordinarily, rumors and speculation will not satisfy the requirements for disqualification of a judge. *See United States v. Cooley*, 1 F.3d 985, 993 (10th Cir.1993), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995) (citations omitted). Anderson's challenge is far different from *Scott* where it was factually conceded that the trial judge, while presiding over the defendant's trial and sentencing, was either actively seeking or had accepted employment in the executive office for all federal prosecutors while one of the federal prosecutors was prosecuting the case. *See Scott, supra* note 4, 559 A.2d at 756. The standard for recusal is an objective one which requires recusal where "there is 'an appearance of bias and prejudice sufficient to permit the average citizen reasonably to question [the] judge's impartiality.' " *Id.* at 748–49. We are not persuaded that the speculations of unknown individuals about a judge's future prospects for a position would *reasonably* call into question the judge's impartiality to an average citizen.[6]

■ Anderson also argues that the trial judge was required to recuse because Anderson had named him as a "co-conspirator in a lawsuit with federal officials and private attorneys" in the United States District Court for the District of Columbia (District Court). Anderson filed an action in District Court against his trial counsel and his appellate counsel, who had represented him in his underlying criminal case in Superior Court and in this court, alleging that they had conspired to deprive him of effective assistance of counsel.[7] Anderson filed an amended complaint, in which he joined as party defendants, Judge Walton, who had presided over his criminal trial, and the Assistant United States Attorney, who was the prosecutor in the case. In this amended complaint, Anderson alleged that the defendants (his lawyers, the prosecutor and the judge) had conspired to deprive him of his constitutional rights. On June 15, 1993, the District Court dismissed the claims against Judge Walton and the prosecutor on the grounds that both were absolutely immune from suit for official actions taken in their official capacities.[8] Concluding that the

---

**6.** The facts presented here do not raise the question of whether the objective recusal standard would be met if the judge in fact sought the position of U.S. Attorney through the commission mentioned in the newspaper article.

**7.** The lengthy procedural history of the case is recounted in detail in an opinion of Judge Oberdorfer in *Anderson v. D.C. Public Defender Service, et al.*, 881 F.Supp. 663 (D.D.C. 1995) enjoining Anderson from filing further complaints with the court without first seeking and obtaining leave of court. The facts pertaining to Anderson's suit against Judge Walton are also set forth in a copy of Judge

Oberdorfer's earlier opinion and order entered on June 15, 1993 dismissing the case with prejudice as to Judge Walton and all defendants, which Anderson attached as an exhibit to his second affidavit to disqualify Judge Walton in this case.

**8.** The District Court dismissed the complaint against all defendants with prejudice, noting that Anderson had "been afforded a full and lengthy opportunity to amend his complaint following remand from the Court of Appeals," but he had failed to allege facts supporting a conspiracy theory. The court also determined that Anderson's specific actions related to his own attorneys reflected only their inde-

parties' positions were so clear as to warrant summary action, on October 12, 1993, the District of Columbia Circuit summarily affirmed the dismissal of Anderson's complaint for the reasons stated in the trial court's opinion.[9]

Anderson's suit in District Court against Judge Walton was essentially one seeking to attack collaterally his convictions in the Superior Court. In his second affidavit to disqualify Judge Walton, Anderson claimed that he had filed a complaint against the judge and his attorneys for depriving him of his constitutional rights during his criminal trial. In the federal suit, Anderson claimed that his attorney failed to interview witnesses, explore inconsistencies in the testimony of witnesses called by the government, and misquoted evidence. *Anderson v. D.C. Public Defender Serv., supra* note 7, 881 F.Supp. at 664. In an amended complaint joining Judge Walton and the trial prosecutor, Anderson made conclusory allegations that they acted in concert with the attorneys to deprive him of his constitutional rights.

■ A judge is required to recuse from a case whenever he has a personal bias or prejudice for or against either party in the case. *See* Super. Ct. Civ. R. 63–I, made applicable to criminal cases by Super. Ct.Crim. R. 57(a). However, "[t]he bias or prejudice must be personal in nature and have its source 'beyond the four corners of the courtroom.'" *Gregory v. United States,* 393 A.2d 132, 142 (D.C. 1978) (quoting *Tynan v. United States,* 126 U.S.App.D.C. 206, 210, 376 F.2d 761, 765, *cert. denied,* 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967)). In *Gregory,* the appellant filed an affidavit for recusal of the judge, alleging that he had sought previously a writ of mandamus against the trial judge and that the trial judge had held him

in contempt in another judicial proceeding. *Id.* at 142. We held that the mandamus proceeding and prior contempt proceeding were not legally sufficient to justify recusal of the trial judge. *Id.* at 142–43. The lawsuit Anderson filed in District Court is analogous to the actions in *Gregory.* Essentially, Anderson sought to challenge in the District Court suit the manner in which Judge Walton handled his case in Superior Court. The filing of the District Court suit involving the judge's adverse judicial rulings and actions is insufficient to warrant recusal under our rules. *See id.* Further, the claims against Judge Walton were dismissed with prejudice long before Anderson's second request for recusal. Although a judge has a duty to recuse when required, "a judge has as strong an obligation not to recuse when the situation does not require." *Nichols, supra,* 71 F.3d at 352. On the these facts, the judge properly denied the request.

■ Similarly, Anderson's remaining claims amount to no more than adverse judicial action. In summary, he contends that the trial judge delayed action on a *coram nobis* petition, instructed the jury erroneously, improperly ruled on a habeas corpus petition, and "castigated" him during sentencing.[10] These actions, which arose out of judicial rulings, are legally insufficient to establish bias requiring recusal of the trial judge. *See Gregory, supra,* 393 A.2d at 142–43.

For the foregoing reasons, the decision of the trial court denying Anderson's request for disqualification or recusal of the trial judge hereby is

*Affirmed.*

---

pendent judgments and actions as his attorneys and that Anderson had failed to allege any common plan, scheme or other factors showing a conspiracy.

9. *Anderson v. Buchanan,* No. 93–7116, 1993 WL 430945 (D.C.Cir. Oct.12, 1993); *see also*

*Anderson v. D.C. Public Defender Service, et al.,* 881 F.Supp. 663 (D.D.C.1995).

10. We find no basis for Anderson's claim that Judge Walton was not a judge of the Superior Court when ruling on matters related to his case.