FARRELL, Senior Judge:
May an anonymous civil defendant who files and prevails on a special motion to quash a subpoena for identifying information under D.C.Code § 16-5503 (2012 RepL), part of the District’s Anti-SLAPP Act. (the Act), be awarded attorney’s fees under D.C.Code § 16-5504(a) without showing that the suit prompting the subpoena was frivolous or improperly motivated? We answer that question yes. We further hold, after considering the language and legislative history of the Act, that a successful movant under § 16-5503 is entitled to reasonable attorney’s fees in the ordinary course — ie., presumptively— unless special circumstances in the case make a fee award unjust. Because no such circumstances .exist on the record of this case, we reverse the order of the trial court denying altogether the defen-dani/movant’s-request for .attorney’s fees, and remand the case solely for the court to consider the reasonablenesg.-of the amount of fees requested. ¡ ,
L
A.
The Anti-SLAPP. Act, as- explained in our earlier opinion, Doe No. 1 v. Burke, 91-A3d 1031 (D.C.2014) (Doe I), was enacted by the D.C. Council to “protect the targets of ... suits’- intended “as a weapon to chill or silence, speech.” Id. at 1033.[1] One way-the Act does so, “recognizing the importance' of anonymous speech on matters of public interest,” id. at 1036, is to enable an individual “ ‘whose personal identifying information is sought’ to safeguard his identity by filing a ‘special motion to quash’- a subpoena,” id. (quoting D.C.Code § 16-5503(a)), and, if successful, “avoid being named'in. a-suit and served with a complaint.” Id. To succeed on a special motion to quash,
the moving party must “make[ ] a prima facie showing that the underlying claim arises from an act in furtherance of the right of advocacy on issues of public interest.” D.C.Code § 16-5502(b); see also D.C.Code § 16-5503(b). Upon such a showing, the motion will be granted unless the opposing party demonstrates a likelihood of success on the merits of his or her underlying claim. Id.
Doe I, 91 A.3d at 1036 (brackets in origi *572 nal).[2]
In this case, áppellee Susan L. Burke, an attorney, sued multiple anonymous defendants (“John Does 1-10”) alleging defamation and other torts arising from edits made to a Wikipedia webpage established in Ms. Burke’s name. John Doe 1 had allegedly added information to the page using the name Zujua. After Ms. Burke caused a subpoena to be issued to obtain Wikipedia’s user data and thereby learn Zujua’s (and others’) identity, Zujua filed a special motion to quash the subpoena. The trial court denied the motion, but this court reversed. We held as a matter of law that Zujua had shown “that his speech is of the sort that the statute is designed to protect,” id. at 1036, 1043-44,[3] and that Ms. Burke, who was thus “required to show malice on Zujua’s part ... to succeed” in rebuttal, had failed to show a “likelihood of success on [her] underlying claims.” Id. at 1045.
B.
On remand, Zujua moved to be awarded attorney’s fees under D.C.Code § 16-5504(a), which provides that “[t]he court may award a moving party who prevails, in whole or in part, on a motion brought under ... § 16-5503 the costs of litigation, including reasonable attorney fees.” In response, attorney Burke argued mainly that the trial court in its discretion (“[t]he court may award ... attorney fees”) should award no fees in the circumstances of the case. The trial judge agreed and denied the fee request entirely.[4] He concluded first that attorney’s fees were unjustified because Ms. Burke had not filed “a classic SLAPP suit” against Zujua, one “within the meaning of the D.C. [Anti-SLAPP] statute.” Citing legislative history corresponding to this court’s recognition in Doe I that SLAPP suits “masquerade as ordinary lawsuits” but in reality are used “as a weapon to chill or silence speech,” Doe I, 91 A.3d at 1033 (citation and internal quotation marks omitted), the judge found the plaintiffs suit to have none of the earmarks of such an action: It “was not based on flimsy speculation and was not intended to inflict costly litigation fees ... as a means to stifle speech”; it could “hardly be seen as frivolous” because it “set forth a plausible argument” for believing that Zujua had acted maliciously; and “it is not unreasonable to surmise that *573 plaintiff filed what she believed to be a meritorious suit to recover for the harm caused--by the false statements made via anonymous Wikipedia edits.” ■
The judge reasoned further that, “even if an action is construed as a SLAPP suit, attorneys’ fees and costs are not automatic and máy be recovered only upon a showing that a frivolous claim has been ■ made against defendants.” Exercising the discretion he understood to be afforded him by the fee provision’s “permissive language,” he determined that because the plaintiffs suit, although unsuccessful, had not been filed “with [the] intent to inflict costly litigation fees, bring a frivolous suit, or ... stifle speech,” attorney’s fees were unjustified in light of “the equities” of the case, “the aims of the D.C. Anti-SLAPP Act and the purpose for awarding fees,” and the findings of merit (or nori-frivolousness) and proper motivation the court had made regarding the underlying suit.[5]
II.
A.
For the trial judge, it is apparent, “a moving party who prevails” on a motion to quash under § 16-5504 may not be awarded attorney’s fees, presumptively or otherwise, without consideration by the court of the merits of, and motive behind, the underlying lawsuit. Only if the suit, besides having failed the test of § 16-5503(b) (“likely to succeed on the merits”), has been determined to be frivolous or intended to stifle speech by causing undue litigation costs is it one within the “meaning” of the Act — a “classic SLAPP suit” — so as to justify the statutory shift of the obligation to - pay costs including. attorney’s fees to the plaintiff.
The threshold' defect in this statutory reading is that nowhere does the Act refer to or define a ‘«classic” SLAPP suit, as distinct from one against which the defendant may invoke the statute’s protections after a threshold prima facie showing. As explained above, the-burden of maintaining the suit shifts to the plaintiff once the defendant has made “a prima facie showing that the underlying claim arises from an act in furtherance of the right of advocacy on issues of public interest....” D.C.Gode § 16-5503(b). A “claim” is defined as “any civil lawsuit, claim, complaint, cause of action ... or other civil judicial pleading — ” Id. § 16-5501(a) (emphasis added). Nothing in this language, or in the words of the attorney’s fee provision, § 16-5504(a), implies that to qualify for fees the anonymous defendant successful in quashing a subpoena must have resisted a SLAPP claim “classic” or exemplary in nature, rather than one arising — solely but pivotally — from the defendant’s exercise of a special form of speech or advocacy. The protections of the Act, in short, apply to lawsuits which the D.C. Council has deemed to be SLAPPs, and *574 this court’s ruling, in Doe I that Zujua was entitled to those protections settled the question of whether attorney Burke’s suit fit within the statutory meaning.
More important, however, than this' illusory distinction the trial judge saw between “classic” SLAPP suits and others is that the Act, by its [terms, impliedly but clearly rejects the additional showing of frivolousness or wrongful motivation the judge required before a party, who, files a special motion to quash and prevails may recover attorney’s fees. The costs provision, D.C.Code § 16-5504, provides in full:
(a) The court may award a moving -party who prevails, in whole' or in part, on a motion brought- under § 16-5502[6] or § 16-5503 the costs of litigation, including reasonable attorney fees.
(b) The court may award reasonable attorney fees and costs to the responding party only if the court finds that a motion brought under § 16-5502' or § 16-5503 is frivolous or is solely intended to cause unnecessary delay.
The distinction could hardly be clearer between when, to qualify for attorney’s fees, a party must show frivolousness or improper motive in the opponent’s action, and when not. Unlike the “moving party who prevails .... on a motion,” “the responding party”- — the original plaintiff— may be awarded fees only if the court finds a complete lack of merit or improper motivation in the special motion to quash. This distinction between what the Council required in one of two companion provisions but not the other must be assumed to be deliberate:
When the legislature uses a term or phrase in one .., provision but excludes it from another, courts do not imply an intent to include the missing term in [the] .,.. provision where the term or phrase is excluded. Instead, omission of the same provision from a similar section is significant to show different legislative intent for the two sections.
2A Norman Singer & Shajíbie Singee, Sutherland Statutes and Statutory Construction § 46.6 (7th ed.2015). In the same vein, the Supreme Court has stated:
“[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion”.... Had Congress intended to restrict [the subsection in question to a particularly meaning], it presumably would have done so expressly as it did in the immediately following subsection .... We would not presume to ascribe this difference to a simple mistake in draftsmanship.
Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (internal citations omitted; emphasis added).
The Act’s silence in not requiring the moving party on a special motion to quash to show more-than that it prevailed thus speaks eloquently as to the Council’s intent regarding entitlement to reasonable attorney’s fees. In departing, for example, from the traditional American Rule governing fees,[7] the Act gives no sign — as to prevailing movants — of retaining vestiges of the “bad faith litigation” exception to *575 that rule. Synanon Found., Inc. v. Bernstein, 517 A.2d 28, 37 (D.C.1986). The Act similarly bears no resemblance in this' regard to Anti-SLAPP statutes such as New York’s (relied on by the trial judge) that authorize a fee-shift only where “the action involving public petition and participation was commenced or continued without a substantial basis in fact and law” (or “substantial argument” for change in law). N.Y. Civil Rights Law § 70-a (l)(a) (McKinney 2011).[8] In clear contrast to the responding party’s eligibility for fees, the Act imposes no requirement on a successful movant under § 16-5504(a) to show either of the twin facts relied on by the trial court — improper motive (bad faith) or total lack of merit in the underlying suit— before reasonable attorney’s fees may be awarded.
.From the text of the statute alone, therefore, we think it a fair inference that the D.C. Council intended the successful movant under § 16-5503 to be awarded attorney’s fees in the ordinary course, i.e., presumptively, on request. But the issue is not wholly without uncertainty or ambiguity because, as the trial judge emphasized, the legislature used the verb “may” to authorize the shift in fees; it did not use “shall” or “must,” as it might have, and as a general rule “may” connotes latitude or choice — in a word, discretion. See, e.g., In re Langon, 663 A.2d 1248, 1250 (D.C.1995). We accordingly turn tp the legislative history of the Act for what guidance it may furnish in resolving this ambiguity concerning the discretion § 16-5504(a) affords the trial court.
B.
That history begins with the Long Title to Bill 18-893, the “Anti-SLAPP Act of 2010,” which defines the purpose of the legislation as including: “to provide a motion to quash attempts to seek personally identifying information; and to award the costs of litigation to the successful party on a special motion.”[9] “[I]n determining the extent and reach of an Act of the legislature, the court should consider not only the statutoiy language, but also the title.” Mitchell v. United States, 64 A.3d 154, 156 (D.C.2013) (citation omitted). The stated purpose here indeed suggests that the Council meant for the trial court “to award” reasonable fees in the ordinary course to the defendant successful in moving to quash.
That inference. gains further strength from the Committee Report accompanying Bill 18-893. In ¡citing the threat to free expression posed by SLAPP suits “over the past two decades” and the corresponding need for local Anti-SLAPP legislation, the Committee recognized the substantial cost to defendants (named or “unnamed”) of litigating SLAPP actions even equipped with the means the Bill provided — special motions to dismiss or to quash — “to move expeditiously, and equitably, to dispense [with] a. SLAPP.” -.Committee Report at 1, 4. The Committee Report therefore repeatedly pairs the “substantive rights” the *576 Bill “extends to defendants in a SLAPP” with the authority granted the trial'court to award “the costs of litigation” to “the successful party of a special motion to dismiss or ... to .quash.” Id. at 4, 6. And in providing for both — ie., the right to 'pursue an , early end to the litigation, and related costs to the movant successful in doing so — the Bill “closely mirrored” federal Anti-SLAPP legislation then pending before Congress,[10] which unambiguously entitled a moving party who prevails on a special motion to reasonable attorney’s fees. Id. at 3-4.[11] The fact that the federal bill used “shall” to convey that meaning counts for little, in our view: what matters is that the D.C. Council hewed closely to that statutory model — and, its clear distinction between the successful “moving” and “responding” parties — in crafting the District’s attorney’s fee provision.[12] Nothing in ’the legislative history implies, by contrast, that the Council had in mind granting broad or loosely constrained discretion to the trial court to award or deny attorney’s fees to a party prevailing on its special motion to quash.
C.
In light of all we have seen, it is plain to us that D.C.Code § 16-5504(a) contemplates a presumptive award of attorney’s fees to the moying party -who prevails on a special motion to quash under § 16-5503. In treating differently for fee purposes the successful moving party (subsection (a)) and successful opponent of the motion (subsection (b)), § 16-5504 is most naturally read .as patterned after existing laws that, while couching the authority to award fees in the permissive verb “may,” distinguish similarly between prevailing plaintiffs and defendants, and in *577 the ordinary case call for an award of attorney’s fees to the former on request. The paradigmatic example of laws embodying that distinction are the federal Civil Rights Acts, as interpreted in Newman v. Piggie Park Enters., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and Christiansburg Garment Co. v. Equal Emp’t Opportunity Comm’n, 434 U.S. 412, 98 S.Ct. 694, 64 L.Ed.2d 648 (1978). Thus, whereas a prevailing plaintiff under Title II of the Civil Rights Act of 1964 “should ordinarily recover an attorney’s fee unless special circumstances would render such an award unjust,” Newman, 390 U.S. at 402, 88 S.Ct. 964 the trial court may “award attorney’s fees to a prevailing defendant in a ... case [under Title VII of the Civil Rights Act only] upon a finding that the plaintiffs action was frivolous, unreasonable,' or without foundation.” Christiansburg, 434 U.S. at 421, 98 S.Ct. 694; see also Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). The parallel to D.C.Code § 16-5504 is apparent when we replace the Newman!Christiansburg distinction with the contrast between “a moving party who prevails” on a special motion and “the responding party.” Cf. Fogerty v. Fantasy, Inc., 510 U.S. 517, 521-22, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (rejecting circuit" court rule under the Copyright Act of 1976 that “prevailing plaintiffs are generally awarded attorney’s fees as a matter of course,” in part because “[t]he statutory language ... gives no hint that successful plaintiffs are to be treated differently from successful defendants”).
Furthermore, • although the Newman/Christiansburg distinction' favoring prevailing plaintiffs rests on what the. Supreme' Court “found to be the important policy objectives of the Civil Rights statutes,” id. at 523, 114 S.Ct. 1023 it would be wrong .to slight the policy, concerns similarly underlying the Anti-SLAPP Act’s provision for a special motion to quash and the corresponding fee distinction favoring successful movants. “The right the Council sought to protect with the special motion to quash,” we stated in Doe I, supra, “is the right to engage in anonymous speech,” a “constitutional, right” underscoring the “substantial public interest” the Council saw in protecting “the intended targets of SLAPP actions.” 91 A.3d at 1039 (internal quotation marks omitted); see also Committee Report, supra note 9, at 1, 3 (pointing to the “chilling effect [of SLAPP suits] on the exercise of constitutionally protected rights,” particularly speech involving “the kind of grassroots activism that should be hailed in our democracy”). While it is too much to equate the successful movant under D.C.Code § 16-5503 with the prevailing Civil Rights Act plaintiff, “the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority,” Christiansburg, 434 U.S. at 418, 98 S.Ct. 694 (internal quotation marks omitted), still the Council’s concern to protect SLAPP targets “engag[ed] in political or public policy debates,” Committee Report at 4, by special motions and related reimbursement for litigation costs strongly suggests its intent to define the court’s discretion as to fee awards in the same way as do federal laws protecting basic rights.[13]
*578 In Tenants of 500 23rd Street, N.W. v. District of Columbia Rental Hous. Comm’n, 617 A.2d 486 (D.C.1992), this court read the attorney’s fee provision of the District’s Rental Housing Act to embody the Newman/Christiansburg distinction, and “as entitling prevailing tenants to a presumptive award of attorney’s fees.” Id. at 488 (citing Newman, 390 U.S. at 402, 88 S.Ct. 964). We now read D.C.Code § 16-5504(a) in similar fashion: it entitles the moving party who prevails on a special motion to quash to a presumptive award of reasonable attorney’s fees on requést, “unless special circumstances would render such an award unjust.” Christiansburg, 434 U.S. at 416-17, 98 S.Ct. 694.
D.
No such circumstances disqualifying Zujua from an award of reasonable fees appear on the record of this case. Appellant Burke cites, presumably as one such circumstance, the trial judge’s determination that Zujua’s attorneys are employed by a public interest organization that, judging from its wébsite-stated mission, “already achieved an award by succeeding in its own interest” through having “protected Zujua’s] right to anonymous free speech.” See note 6, supra. But § 16-5504(a) provides for an award of fees to the “moving party who prevails” (emphasis added), not to a party’s counsél. See Evans v. Jeff D., 475 U.S. 717, 730-32, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) (analyzing similar statutory language as demonstrating that the legislature had not “bestowed fee awards upon attorneys,” but on the “prevailing party ”) (emphasis .in original). Nor is it material that Zujua’s attorneys (the Center) represented him pro bono before requesting fees on his behalf. See Blum v. Stenson, 465 U.S. 886, 894, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (holding that “Congress did not intend the calculation of fee awards [in federal civil rights actions] to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization”); Link v. District of Columbia, 650 A.2d 929, 934 (D.C.1994).
It likewise cannot count, as a circumstance making a fee award “unjust,” Chris-tiansburg, 434 U.S. at 417, 98 S.Ct. 694 that Zujua rejected a settlement offer attorney Burke had made after filing the suit and seeking . to learn Zujua’s identity. Aside from this court’s past rejection of the admissibility of settlement negotiations in a trial court’s resolution of attorney’s fee disputes, see Lively v. Flexible Packaging Ass’n, 930 A.2d 984, 994 (D.C.2007),[14] the record terms of the settlement proposed here are much too ambiguous to support Ms. Burke’s assertion that, rather than “easily resolve[]” the “entire dispute,” Zujua “preferred] instead to litigate” and incur unnecessary litigation costs (Br. for Appellee at 2, 22). Zujua sought to end the litigation (as to it) at the earliest possible stage via a special motion to quash. Ms. Burke, by contrast,
was on notice from the time [that] motion was filed that [Zujua] believed her lawsuit was a SLAPP. The fee-shifting provision is plain on the face of the Anti-SLAPP statute. Had Ms. Burke *579 wished to minimize her potential exposure to a fee award, she could have dismissed her lawsuit at any time, rather than continue after- [Zujua] rejected her settlement offer.
Brief for Amicus Curiae at 21-22.
E.
In light of the trial judge’s refusal to award attorney’s fees altogether, he did not reach Ms. Burke’s summary challenge to the reasonableness of the amount of fees Zujua was requesting. Despite the largely conclusory nature of that challenge,[15] we elect to remand the case to the trial judge to evaluate the reasonableness of the award requested — a request, we add, that was necessarily augmented by the. costs of litigating the initial appeal in this case. The trial court will also have to assess the reasonableness of the fee amount that Zujua has indicated it will seek for attorney work subsequent to the original fee request — so-called “fees on fees.” Given the already protracted nature of the litigation, this court may be forgiven for expressing the hope that an accommodation between the parties will spare the trial court these remaining tasks.
Reversed and remanded.
Associate Judge MCLEESE, concurring in part and dissenting in part.

. "SLAPP” stands for a "strategic lawsuit against public participation.” Doe I, 91 A.3d at 1033.

. The same standards apply to a "special motion to dismiss,” D.C.Code § 16-5502 (2012 Repl.), not at issue in this case. Doe I, 91 A,3d at 1036. Our analysis thus focuses on the “special motion to quash,” though most of what we say applies to the former motion as well.

. Specifically, in editing Ms. Burke's web-page, Zujua had spoken' — or "advoca[ted]”— on an “issue of public interest,” namely one "related to ... a public figure,” § 16-5501(3), because Ms. Burke is "a limited-purpose public figure” under standards applied by this court and others in the defamation context. Doe I, 91 A.3d at 1040-43 (concluding that Ms. Burke had assumed a visibly public position in connection with, among other things, her lawsuit against a company then known as Blackwater for injuries to civilians resulting from shootings in 2007 in- Iraq). Nor, we held, was Zujua’s speech "directed primarily toward protecting the speaker’s commercial interests,” so as to disqualify it, under another provision of § 16-5501(3), from the protection of the special motion. Id. at 1043 n. 16.

.When the judge denied the fee request, Ms. Burke’s suit against all of the defendants, including Zujua, was still pending. Her subsequent voluntary dismissal of the entire action removes any basis for her present, halfhearted contention that we lack jurisdiction to review the denial of the fee award. See, e.g., Anderson v. United States, 754 A.2d 920, 922-23 (D.C.2000); see also Purcell v. Thomas, 28 A.3d 1138, 1141 (D.C.2011) (noting separate appealability of “judgment disposing of the merits” and "decision regarding attorney fees”).

. As one "equity” counting against a fee award, the judge cited website indications that Zujua’s attorneys, employed by an organization named the Center for Individual Rights (the Center), in general "pursue this type of litigation to further their own [institutional] self-interest and need no encouragement [through a fee award] to do so.” In “protecting [Zujua's] right to anonymous free speech,” which accorded with the Center’s . own stated "public policy positions,” Zujua’s “counsel ha[d] already achieved an award by succeeding in its own interest.” Further counting against an award, in the judge’s view, were representations the judge found undisputed that Zujua had rejected a settlement offer by plaintiff Burke "that would not require [Zujua] to reveal his identity.” Both of these matters are discussed in part II. D., infra.
Having denied Zujua’s request for attorney's fees entirely, the judge had no. occasion to, consider the reasonableness of the fee amount requested. .See part II. E„ infra.

. See note 2, supra.

. "[T]his jurisdiction follows the American Rule under which .. every party to a case shoulders its own attorneys’ fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement,. or certain narrowly-defined common law exceptions_” Oliver T. Carr Co. v. United Techs. Commc'ns Co., 604 A.2d 881, 883 (D.C.1992) (internal quotation marks omitted).

. The trial judge cited Rubel v. Daily News, LP, 2010 WL 3536793, 2010 N.Y. Misc. LEXIS 4273, at *19-20 (N.Y.Sup.Ct. Aug. 26, 2010), which read § 70-a (l)(a) to mean that "attorneys’ fees and costs ... may be recovered only upon a showing that a frivolous claim has been made 'against defendants -” New York is one of a handful of states whose Anti-SLAPP statutes include no special motion to dismiss or quash, and accordingly condition the defendant’s entitlement to attorney’s fees on a showing of frivolousness (no "substantial basis in fact or law”) in the underlying suit. See also, e.g., Del.Code Ann. tit. 10, § 8138(a)(1) (West 2015).

. D.C. Council, Committee on Public Safety and the Judiciary, Report on Bill 18-893 at 26 (Nov. 18, 2010) (Committee Report) (emphasis added).

. H.R. 4364, the "Citizenship Participation Act of 2009,” H.R. 4364, 111 Cong. (2009). H.R. 4364 was not enacted into law.

. The attorney's fee provision of H.R. 4364 stated, in relevant part, as follows:
SEC. 8. FEES AND COSTS.
(a) Attorney’s Fees — The court shall award a moving party who prevails on a special motion to dismiss or quash the costs of litigation, including a reasonable attorney’s fee.
(b) Frivolous Motions and Removal — If the court finds that a special motion to dismiss, special motion to quash, or the removal of a claim under this Act is frivolous or is solely intended to cause unnecessary delay, the court may award ... reasonable attorney’s fees and costs to the responding party.
The Committee Report also' took note of the very large number of states that had enacted Anti-SLAPP laws "creat[ing] a similar special motion to dismiss.” The District’s Bill was "[fjollowing the lead” of these "other jurisdictions" as well in both "extendpngl substantive rights” and pairing them with the allowance of costs and fees to "the successful party of a special motion to dismiss or ..; quash.” Committee Report at 3-4.

.Indeed, what may be termed "unofficial legislative history,” see Public Invest. Ltd. v. Bandeirante Corp., 740 F.2d 1222, 1228 (D.C.Cir.1984), not disputed by attorney Burke, suggests how close the Council was to conforming the District’s fee provision exactly to federal Bill H.R. 4364. In email correspondence before the second reading of the proposed law, the Committee Clerk of the Council’s Committee on Public Safety and the Judiciary asked two attorneys who had had "great input” in the Bill before mark-up whether it should be amended to say "shall award” costs, including attorney's fees. Arthur Spitzer. of the American Civil Liberties Union replied that other federal and District laws using "may” had been construed to "make[] the fees all-but-mandatory in most cases,” but that a "possible danger of using 'shall’ in the Anti-SLAPP law” was that courts would take this to mean fee awards under other District fee-shift provisions were to be "less automatic,” so that, in his view, "perhaps keeping 'may' would be better.” The Committee Clerk, replied that “it is good to know there are valid reasons not to go that route.”

. An ««successful motion to quash under § 16-5503, by contrast, does not implicate the strong protective concerns underlying the special motion: the defendant’s speech will not have been shown to "arise[] from an act in furtherance of the right of advocacy bn issues of public interest," or the plaintiff will have shown a likelihood that the speech was “malicious," so as to largely trump First Amendment concerns, D.C.Code § 16-5502(b). That is why, contrary to Judge McLeese’s view, post at 583-84, it is not "counterintuitive” for the statute to deny a presumptive fee award to the defendant *578 forced to litigate to verdict or even summary judgment before prevailing.

. Ms. Burke argues that, her use of Zujua’s refusal to settle as a "shield” against a fee request, rather than a "sword,” was consistent with Fed.R.Evid. 408, cited in Lively. , But the federal rule precludes the admission of evidence of "conduct or a statement made during compromise negotiations about [a] claim” to "either ,.. prove or disprove the validity ... of [the] ... claim _” Fed. R.Evid. 408(a) (emphasis added). Burke undeniably was seeking to "disprove" Zujua’s entitlement to fees.

. Ms. Burke asserted, for example, that the requested fee amount was "unreasonable on its face” given that "[t]his lawsuit did not result in extensive work, such as reviewing voluminous documents, talcing and defending depositions, and going to -trial”; and that "[t]he Center devoted all three of its lawyers to this case and then billed for a significant number of meetings amongst themselves.”