*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-FS-1046

IN RE PETITION OF P.D.J.K.,

J.W., APPELLANT.

FILED 04/26/2018
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(ADA-117-16)

(Hon. Carol Ann Dalton, Reviewing Judge)
(Hon. Rahkel Bouchet, Magistrate Judge)

(Submitted April 3, 2018                    Decided April 26, 2018)

*Adriane R. Marblestein-Deare* was on the brief for appellant J.W.

*Ronald A. Colbert* was on the brief for petitioner/appellee P.D.J.K.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Stacy Anderson*, Acting Deputy Solicitor General, and *Pamela Soncini*, Assistant Attorney General, were on the brief for appellee the District of Columbia.

*Karen A. Bower* filed a statement in lieu of brief for appellee J.J.

*Stacey Boehm-Russell*, guardian ad litem, filed a statement in lieu of brief for respondent/appellee S.W.

Before GLICKMAN and FISHER, *Associate Judges*, and WASHINGTON, *Senior Judge*.

FISHER, *Associate Judge*:   Appellant J.W. appeals the decision of the Superior Court to approve the adoption of her daughter S.W. without her consent. She primarily contends that the adoption trial was fundamentally unfair and that the magistrate judge abused her discretion in weighing the evidence.  We disagree and affirm.

## I.  Background

S.W. was born on February 4, 2014.  Appellant J.W. is her biological mother and J.J is her biological father.  When S.W. was nearly eight months old, the District of Columbia Child and Family Services Agency ("CFSA") removed her from J.W.'s care "after J.W. was found incoherent and under the influence of drugs."  On September 30, 2014, CFSA placed S.W. in the care of her paternal grandmother, P.D.J.K.  A few weeks later the court adjudicated S.W. a neglected child and set an initial permanency goal of reunification with J.W.  However, on September 29, 2015, the court changed the permanency goal to adoption due to J.W.'s failure to address her substance abuse, achieve emotional stability, and improve her caretaking skills.  After the change of permanency goal, P.D.J.K. filed a petition to adopt S.W. on February 12, 2016.   An adoption trial was originally set for January 2017 but rescheduled, at J.W.'s request, for May 15 and 19, 2017.

Although the father consented to the adoption of S.W. by P.D.J.K. (his mother) and the guardian ad litem supported the adoption petition, J.W. did not. In March 2017, after this court's decision in *In re Ta.L.*, 149 A.3d 1060 (D.C. 2016) (en banc), J.W. requested an evidentiary hearing on whether the permanency goal should be changed. A hearing was held before Magistrate Judge Rahkel Bouchet on May 15, 2017, the date previously scheduled for the adoption trial to begin. The court heard testimony from three CFSA social workers who had provided services to the family in the year preceding the goal change. J.W.'s counsel did not call any witnesses and J.W. did not attend the hearing. At the conclusion of the hearing Judge Bouchet announced that she would "maintain the goal of adoption" and she issued a written Order on May 30, 2017. J.W. did not appeal that decision.

Judge Bouchet then held a trial on P.D.J.K.'s adoption petition on May 19, 2017, one of the previously scheduled dates. P.D.J.K. and S.W.'s current CFSA social worker each testified during trial, but J.W. was not present and her counsel did not call any witnesses. After considering "the entire record in this matter" in addition to the testimony presented during the adoption trial, Judge Bouchet found by "clear and convincing evidence" that J.W. was an unfit parent, unable "to meet the daily physical, and mental, and emotional needs of herself, let alone the

requirements to meet the needs of the minor child." Judge Bouchet also found that it was in the best interests of S.W. "to be adopted by the petitioner, who she ha[d] resided with for the past two years, and who ha[d] been maintaining and meeting her needs." The court issued a final decree of adoption on July 13, 2017, and J.W. filed a motion for review. Associate Judge Carol Ann Dalton reviewed the record and found that J.W. had not been denied "an impartial and fundamentally fair proceeding" and that Judge Bouchet did not "err or abuse her discretion by granting the adoption petition."

## II. Analysis

"We review a trial court's determination in a proceeding to terminate parental rights (TPR) and waive a natural parent's consent to adoption for abuse of discretion." *In re S.L.G.*, 110 A.3d 1275, 1284 (D.C. 2015). We treat "the magistrate judge's factual findings as the findings of the trial judge and review for abuse of discretion or a clear lack of evidentiary support. As to alleged errors of law, however, we review the record *de novo*, without deference to the judges below." *In re C.L.O.*, 41 A.3d 502, 510 (D.C. 2012) (internal quotation marks omitted).

## A. Appellant Received a Fair Trial

J.W. first argues that the adoption trial "lacked the appearance of impartiality and fundamental fairness" because Judge Bouchet ruled against her at the end of the *Ta.L.* hearing and then presided over the adoption trial four days later. However, J.W. did not object or ask Judge Bouchet to recuse herself either before or during the adoption trial. Although a "judge may have personal experience with particular parties who have appeared before [her] in previous cases, . . . such prior knowledge does not, by itself, generally raise questions about the fairness of a judge." *Mayers v. Mayers*, 908 A.2d 1182, 1194 (D.C. 2006) (citation omitted); *see also Liteky v. United States*, 510 U.S. 540, 551 (1994). To be disqualified from presiding over a proceeding, a judge must have a bias or prejudice for or against a party that is "personal in nature" and that has "its source beyond the four corners of the courtroom." *Anderson v. United States*, 754 A.2d 920, 925 (D.C. 2000) (internal quotations and citation omitted).

Assuming for the sake of argument that appellant has not forfeited this claim, the fact that Judge Bouchet presided over the adoption trial after ruling that the permanency goal should be changed to adoption is, by itself, not enough to establish a lack of impartiality or fundamental fairness. Appellant does not point

to a single fact that demonstrates Judge Bouchet was biased against her. Moreover, the District of Columbia Family Court Act of 2001 recognizes the importance of continuity and actually requires that, to the greatest extent practicable, cases involving members of the same family "be assigned to the same judge or magistrate judge." D.C. Code § 11-1104 (a) (2012 Repl.). We are not persuaded by J.W.'s arguments and hold there was no due process violation.

J.W also claims that the adoption trial was fundamentally unfair because Judge Bouchet "transplanted" testimony from the *Ta.L.* hearing and used it to support her ruling in the adoption trial. Because the two proceedings require different standards of proof, J.W. argues that Judge Bouchet should not have relied so heavily upon the evidence from the *Ta.L.* hearing. However, when terminating parental rights, the trial court may consider relevant facts found in a prior related proceeding where the interested parent was a party and represented by counsel, provided that the decision to terminate parental rights is ultimately based on clear and convincing evidence. *In re J.M.C.*, 741 A.2d 418, 424 (D.C. 1999) (allowing trial court to consider relevant facts found in prior neglect proceeding when terminating parental rights); *see also S.S. v. D.M.*, 597 A.2d 870, 882 n.32 (D.C. 1991).

Although it is generally proper for a court to take notice of factual findings made in a prior related proceeding, Judge Bouchet merely considered testimony from the *Ta.L.* hearing as evidence when making her decision on P.D.J.K.'s adoption petition. Judge Bouchet recognized that the two proceedings were separate and clarified that she was not "using the [*Ta.L.*] testimony for purposes of leading in" to the adoption trial; however, "for purposes of judicial economy," she was not going to require the parties to call the "same witnesses" to give "the same testimony" four days later. Judge Bouchet did not transpose any factual findings from the *Ta.L.* hearing but properly considered the evidence from the *Ta.L.* hearing in which J.W. was a party and represented by the same counsel. She also explicitly noted both orally and in her written Order that the standard of proof required to grant P.D.J.K.'s adoption petition was "clear and convincing evidence." Thus, Judge Bouchet's use of evidence from the *Ta.L.* hearing was entirely proper and most certainly was not, as appellant contends, fundamentally unfair.

## B. The Magistrate Judge Did Not Abuse Her Discretion

J.W. next argues that the magistrate judge abused her discretion by not allowing J.W.'s counsel to cross-examine P.D.J.K. about J.J.'s incarceration and criminal history. J.W. claims that questions about J.J.'s "childhood and the nature

of his upbringing which may have contributed to his apparent disregard for the law" were relevant to P.D.J.K.'s fitness as an adoptive parent. "The extent of cross-examination of a witness with respect to an appropriate subject of inquiry is within the sound discretion of the trial court . . . [and it] may restrict cross-examination to matters that are probative and relevant." *In re L.D.H.*, 776 A.2d 570, 573 (D.C. 2001) (internal quotation marks and citations omitted). The trial court has discretion to limit cross-examination "where the connection between the facts cited by [] counsel and the proposed line of questioning is too speculative to support the questions." *Moore v. United States*, 114 A.3d 646, 655 (D.C. 2015).

Judge Bouchet considered J.W.'s arguments during the adoption trial and determined that whether or not P.D.J.K.'s "adult son" was incarcerated was not "a direct reflection of her parenting" and thus the court was "not going to draw the connection between the adult decisions of [J.J.] and the petitioner." Although J.W. insists she was not trying to "place blame" on P.D.J.K., she still fails to proffer a good faith basis for believing that J.J.'s incarceration as an adult was a reflection on P.D.J.K.'s parenting. *See id.* (a "reasonable factual foundation" for a line of cross-examination "calls for a credible good faith proffer of facts").

Moreover, the trial court did not completely preclude this line of questioning and gave J.W.'s counsel "reasonable latitude" on the issue of P.D.J.K.'s fitness as an adoptive parent. *See Du Beau v. Smither & Mayton, Inc.*, 203 F.2d 395, 396 (D.C. Cir. 1953) (holding that in both criminal and civil trials, "it is the essence of a fair trial that reasonable latitude be given the cross-examiner") (citation omitted); *Coles v. United States*, 36 A.3d 352, 357 (D.C. 2012) (even in a criminal trial, a defendant is guaranteed an "*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish") (internal quotation marks and citation omitted). Judge Bouchet allowed J.W.'s counsel to ask whether P.D.J.K.'s younger son, who lived with her at the time of the hearing, had ever been involved in the criminal justice system. (The answer reflected well on him and his mother.) The magistrate judge also stated that she would allow J.W. to "call [J.J.] and examine him on his choices" if counsel desired. Appellant did not do so. Thus, Judge Bouchet did not abuse her discretion by limiting J.W.'s cross-examination of P.D.J.K.

J.W. contends that Judge Bouchet failed to "consider all the contributing factors in their totality" before finding her "unfit to parent" S.W. Although there is a strong presumption that a child's best interest is served by placing her with her natural parent, this presumption may be rebutted by clear and convincing evidence

that the parent is unfit. *In re S.L.G.*, 110 A.3d at 1285-86. Fitness turns on "whether the parent is, or within a reasonable time will be, able to care for the child in a way that does not endanger the child's welfare." *Id.* at 1286-87. Judge Bouchet expressly acknowledged that J.W. had visited with S.W. and participated in certain court-appointed services. However, because of J.W.'s previous neglect of S.W. and failure to address her own "mental health, substance abuse, and housing issues," Judge Bouchet found that J.W. was unfit and unable to "meet the needs of the minor child." She specifically noted that J.W. had "not been able to maintain any sense of stability in the community," had "been detained on several occasions," and had "not had the ability to overcome her substance abuse despite participating in services." Judge Bouchet did not improperly compare J.W. to P.D.J.K. when discussing fitness and clearly incorporated the parental presumption into her analysis. *Id.* at 1288-89. Thus, she did not abuse her discretion in finding J.W. unfit.

J.W. also claims that Judge Bouchet improperly waived her consent to the adoption of S.W. by P.D.J.K. Although a petition for adoption generally cannot be granted without consent from both parents, consent may be waived if a parent withholds his or her consent contrary to the best interest of the child. D.C. Code § 16-304 (e) (2012 Repl.). "Because granting an adoption without the natural

parent's consent necessarily terminates the parent's rights," the court must weigh the termination of parental rights ("TPR") factors listed in D.C. Code § 16-2353 (b) (2012 Repl.). *In re Ta.L.*, 149 A.3d at 1072. Judge Bouchet analyzed the TPR factors and found that J.W. was withholding her consent to the adoption contrary to S.W.'s best interest. After considering J.W.'s incarceration, lack of stable housing, significant mental health issues, and ongoing substance abuse, Judge Bouchet found by clear and convincing evidence that J.W. could not "provide [the] support and care that the minor child require[d]" and waived J.W.'s consent to the adoption.

Finally, J.W. protests Judge Bouchet's decision to grant P.D.J.K.'s adoption petition. A court may enter a final decree of adoption when it is satisfied that the factors set out in D.C. Code § 16-309 (b) (2012 Repl.) are met. Judge Bouchet found that S.W. was "physically, mentally, and otherwise suitable for adoption" and that P.D.J.K. was "fit and able to provide [S.W. with] a proper home and education" based on testimony from the adoption proceedings. She also analyzed the TPR factors and determined that adoption by P.D.J.K. was in the best interests of S.W. because P.D.J.K. provided S.W. with "a stable and nurturing home environment," did not have any mental or emotional health issues that would negatively affect S.W., and had a strong bond and connection with S.W. Thus, we

conclude that the magistrate judge did not abuse her discretion by terminating J.W.'s parental rights and granting P.D.J.K.'s adoption petition.

### III.   Conclusion

The judgment of the Superior Court is hereby

*Affirmed.*