*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 21-CV-0283 & 21-CV-0440

GERMAN KHAN, MIKHAIL FRIDMAN, and PETR AVEN,
APPELLANTS,

V.

ORBIS BUSINESS INTELLIGENCE LIMITED and CHRISTOPHER STEELE,
APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2018-CA-002667-B)

(Hon. Anthony C. Epstein, Trial Judge)

(Argued September 14, 2022                    Decided April 13, 2023)

*Alan S. Lewis*, with whom *Kim Sperduto* was on the brief, for appellants.

*Christina Hull Eikhoff*, with whom *Kristin Ramsay* and *Kelley C. Barnaby* were on the brief, for appellees.

Before BECKWITH and ALIKHAN, *Associate Judges*, and GLICKMAN,* *Senior Judge*.

---

* Judge Glickman was an Associate Judge at the time of argument.

GLICKMAN, *Senior Judge*:  These consolidated appeals present challenges to awards of attorney fees and other litigation costs to prevailing defendants under the Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Act.[1] "Broadly speaking, the term SLAPP is used to refer to 'an action filed by one side of a political or public policy debate aimed to punish or prevent opposing points of view.'"[2]  The Council enacted the Anti-SLAPP Act "to protect targets of such meritless lawsuits."[3]  The Act empowers defendants to defeat SLAPPs at their inception, expeditiously and at minimal expense, by means of a "special motion to dismiss" the lawsuit and provisions for awarding successful defendants their attorney fees and costs.  The Superior Court made two such awards in the present case after this court, in a previous appeal, affirmed its grant of the defendants' special motion to dismiss.  We now affirm the awards, which compensated the defendants for the expenses they incurred in defeating that lawsuit and in litigating their motion to recover their costs of defense.

---

[1] D.C. Code §§ 16-5501 to -5505.

[2] *Am. Stud. Ass'n v. Bronner*, 259 A.3d 728, 733 (D.C. 2021) (citation omitted).

[3] *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1226 (D.C. 2016).

## I. Background

In 2018, appellants German Khan, Mikhail Fridman, and Petr Aven sued appellees Christopher Steele and his company Orbis Business Intelligence Limited ("Orbis") in Superior Court for defamation. The allegedly false and defamatory statements about them were contained in the so-called "Steele Dossier," a collection of opposition research reports prepared by Steele for use in connection with the 2016 United States Presidential campaign. The Dossier was shared with politicians, government officials, and the media.

The statements at issue in the defamation action recounted what an unnamed "[t]op level Russian government official" told Steele he had heard from an unidentified "trusted compatriot": among other things, that Fridman, Aven, and the Alfa Group (appellants' Russian business conglomerate) had a longstanding relationship with Russian President Vladimir Putin; that they and Putin had exchanged "[s]ignificant favours" of a "political" and "business/legal" nature; that a former Alfa Group executive had acted as their intermediary "to deliver large amounts of illicit cash" to Putin in the 1990s (when Putin was deputy mayor of St. Petersburg); and that Alfa "held 'kompromat'" on President Putin and "his corrupt

business activities from the 1990s," but Putin was able to make Fridman and Aven "do his political bidding."

Steele and Orbis filed a special motion to dismiss the defamation complaint pursuant to § 16-5502 of the Anti-SLAPP Act. As such a motion requires, they made what the Superior Court found to be a "prima facie showing" that appellants' claim of defamation arose from "an act in furtherance of the right of advocacy on issues of public interest."[4] Upon such a showing, the court must grant the special motion to dismiss "unless the responding party demonstrates that the claim is likely to succeed on the merits."[5] As we have explained, the question is one of legal sufficiency:

> [I]n considering a special motion to dismiss, the court evaluates the likely success of the claim by asking whether a jury properly instructed on the applicable legal and constitutional standards could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion. This standard achieves the Anti-SLAPP Act's goal of weeding out meritless litigation by ensuring early judicial review of the legal sufficiency of the evidence, consistent with First

---

[4] D.C. Code § 16-5502(b); *see also id.* § 16-5501(1) (defining "[a]ct in furtherance of the right of advocacy on issues of public interest"); § 16-5501(3) (defining "[i]ssue of public interest").

[5] *Id.* § 16-5502(b). If the court grants the motion, "dismissal shall be with prejudice." *Id.* § 16-5502(d).

Amendment principles, while preserving the claimant's constitutional right to a jury trial.[6]

The trial court concluded that appellants failed to make that demonstration in this case because they were unable to proffer clear and convincing evidence that Steele acted with actual malice, i.e., with knowledge that his statements were false or with reckless disregard for whether they were false or not.[7] On appeal, this court affirmed the Superior Court's rulings and upheld its grant of the special motion to dismiss.[8] "Even at the special motion to dismiss stage," we held, "appellants must

---

[6] *Mann*, 150 A.3d at 1232-33; *see also id.* at 1236 (concluding that "the standard to be employed by the court in evaluating whether a claim is likely to succeed may result in dismissal only if the court can conclude that the claimant could not prevail *as a matter of law*").

[7] The court held appellants to heightened constitutional proof standards (clear and convincing proof of actual malice) because it found them to be limited-purpose public figures vis-à-vis the public controversy "relating to Russian oligarchs' involvement with the Russian government and its activities and relations around the world, including the United States," to which the statements at issue related. *See id.* at 1236 ("The precise question the court must ask [in ruling on a special motion to dismiss] is whether a jury properly instructed on the law, including any applicable heightened fault and proof requirements, could reasonably find for the claimant on the evidence presented.").

[8] *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 513 (D.C. 2020), *cert. denied*, 141 S. Ct. 1074 (2021). We refer the reader to our opinion in this case for a fuller account and discussion of appellants' defamation claim, the special motion to dismiss it, and the Superior Court's rulings on that motion.

proffer evidence capable of showing [actual malice] by the clear and convincing standard."[9]

Having prevailed on that motion, Steele and Orbis moved pursuant to § 16-5504(a) of the Anti-SLAPP Act for an award of their reasonable attorney fees and other costs of the litigation. For convenience, we shall refer to the award in this opinion as a "fee award," and to § 16-5504(a) as a "fee-shifting" statute. Appellants did not dispute the reasonableness of the expenses that appellees sought to recover, but they opposed the motion on three other grounds.

First, appellants argued that special circumstances made a fee award unjust because their defamation lawsuit was not a "classic meritless" SLAPP brought in bad faith; their "goal in bringing the instant action," they said, "was not to prevent expression of an opposing point of view, but rather, was to clear their names" after they had been publicly maligned. Second, appellants argued that the fee-shifting provision in § 16-5504(a) is unconstitutional, on its face and as applied to them, because it imposes an undue burden on the First Amendment right to petition the government for a redress of grievances. Third, appellants contended that the

---

[9] *Id.* at 509.

application of the Anti-SLAPP Act's special motion to dismiss and fee-shifting provisions in their case violated the requirement in D.C. Code § 11-946 that the Superior Court "conduct its business according to the Federal Rules of Civil Procedure" unless this court has approved a modification of those Rules.

The trial judge, Associate Judge Epstein, rejected each of appellants' arguments, accepted the reasonableness of appellees' request, and issued an order on April 2, 2021, awarding appellees their attorney fees and other costs in the total sum of $440,538.58.

Appellees then moved for an additional award of $29,807.50 for the fees and costs they had incurred to obtain the April 2 award, which is commonly referred to as an award of "fees on fees."  Appellants urged the court to deny the additional award, arguing that it would unjustly penalize them for raising what they called "three issues of first impression" in their opposition to the April 2 award.  The judge found this objection unpersuasive and granted appellees' motion.

In the present appeals, appellants ask us to overturn each of the Superior Court's awards.  They present us with essentially the same four arguments that they made in the proceedings below.  For the reasons we now proceed to discuss, we are not persuaded by those arguments, and we affirm the two orders on appeal.

## II. Appellees' Entitlement to Reasonable Attorney Fees
## and Costs under D.C. Code § 16-5504(a)

Section 16-5504(a) of the Anti-SLAPP Act provides that "[t]he court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502 . . . the costs of litigation, including reasonable attorney fees." In *Doe v. Burke*, we construed this provision to mean that a successful movant on a special motion to dismiss "is entitled to reasonable attorney's fees in the ordinary course — *i.e.*, presumptively — unless special circumstances in the case make a fee award unjust."[10]

In opposition to appellees' fee motion, appellants argued that a fee award was unwarranted because their defamation lawsuit was not a classic, meritless SLAPP brought in bad faith. To establish that they had filed it in good faith to protect their reputations, appellants submitted documentary materials supporting their claim that Steele had published damaging falsehoods about their relationship with Putin without exercising reasonable care to confirm that the allegations were credible. Prominent in the materials appellants submitted were records and the decision in a

---

[10] *Doe v. Burke*, 133 A.3d 569, 571 (D.C. 2016); *see also id.* at 572 n.2 (the "same standards" apply to each type of special motion).

lawsuit that appellants had brought against Orbis in the United Kingdom for "correction of the record and other remedies" available under the U.K.'s Data Protection Act 1998,[11] and reports issued by the United States Office of the Inspector General and the Senate Judiciary Committee.  As pertinent here, the trial court in the U.K. lawsuit (the High Court of Justice, Queen's Bench Division) found that the allegations in the Steele Dossier about illicit payments to Putin through an intermediary were proven to be false, and that Steele had failed to take reasonable steps to verify those allegations before he included them in his report.[12]  The U.S. governmental reports more generally criticized Steele's methodology and the sources he had relied on in producing the Dossier.  Appellants contended that their good-faith assertion of a substantiated claim of defamation constituted a special circumstance that made a fee award unjust.

---

[11] Appellants sued Orbis and claimed that its publication of the Steele Dossier breached duties owed under the U.K.'s Data Protection Act because the Dossier contained false information of a sensitive personal nature relating to appellants, and because the information was processed and disclosed in ways noncompliant with the Data Protection Act.

[12] *Aven v. Orbis Bus. Intel. Ltd.* [2020] EWHC (QB) 1812, [167], [185] (Eng.). The court found that Steele did take reasonable steps to verify the other information he included in the Steele Dossier concerning appellants' relationship with Putin.

The trial judge disagreed. "Unfortunately for plaintiffs," the judge said, this court in *Doe v. Burke* rejected the argument that special circumstances exist if the lawsuit is not "the classic meritless lawsuit that [the] Anti-SLAPP Act was designed to punish." The judge found that the materials appellants submitted in opposition to the fee motion still did not furnish substantial proof of actual malice and therefore fell short of justifying their filing suit against Steele and Orbis.[13]

The judge did not consider "plaintiffs' motivation or evidence of defendants' negligence . . . [to be] irrelevant to the 'special circumstances' analysis." Rather, he explained,

> [the court] exercises its discretion to conclude that the circumstances cited by plaintiffs are not sufficient to overcome the presumption that defendants are entitled to reasonable litigation costs for their successful special motion to dismiss: when plaintiffs filed this case, it was,

---

[13] Judge Epstein specifically found that:

> [t]he [United Kingdom] court decision, the Inspector General report, and the Senate Committee report do not contain clear and convincing evidence that defendants acted with actual malice . . . . The issue is not "what more a reasonable reporter might have done in the circumstances" but whether "the defendant in fact entertained serious doubts as to the truth of his publication."

(quoting *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 53 (D.D.C. 2005) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968))).

at a minimum, predictable that the Court would require them to prove actual malice; plaintiffs did not, and still do not, have substantial evidence of actual malice; defendants' advocacy on issues of public interest is protected by the First Amendment; granting the special motion to dismiss was not a particularly close call; plaintiffs' aggressive litigation tactics forced defendants to incur very substantial costs to defend themselves against allegations that plaintiffs could not prove; and plaintiffs do not claim that they cannot afford to pay defendants' litigation costs.

We review the judge's decision for an abuse of discretion. "'This court generally defers to the broad discretion of the trial judge in the calculation and award of attorney's fees.' 'Therefore, it requires a very strong showing of abuse of discretion to set aside the decision of the trial court [regarding the awarding of attorney's fees].'"[14] We conclude that appellants have not made that showing here.

Judge Epstein adhered to this court's holding in *Doe v. Burke* that a fee award to successful movants under § 16-5504(a) is presumptively mandatory unless special circumstances would make the award unjust. The successful movant need not show the lawsuit was "frivolous or improperly motivated" to be entitled to an award.[15]

---

[14] *Pellerin v. 1915 16th St., N.W., Co-op. Ass'n, Inc.*, 900 A.2d 683, 690 (D.C. 2006) (alteration in original) (first quoting *District of Columbia v. Hunt*, 520 A.2d 300, 304 (D.C. 1987); and then quoting *Maybin v. Stewart*, 885 A.2d 284, 288 (D.C. 2005)).

[15] *Doe*, 133 A.3d at 571; *see also id.* at 573-74.

The D.C. Council authorized fee-shifting in the Anti-SLAPP Act even absent such a showing based on its concern that the prospect of incurring substantial unreimbursed costs to defend free speech would deter the exercise of First Amendment rights.[16] The burden to show the existence of special circumstances sufficient to deny an award was on appellants' shoulders.

Appellants argue that Judge Epstein misapprehended the "special circumstances" exception. They understand him to have ruled, erroneously, that they needed to present sufficient proof to defeat appellees' special motion to dismiss in order to avoid being required to pay appellees' attorney fees. That is not how we understand the judge's ruling, however. His point was a different one: that appellants could not reasonably have believed they had the evidence they needed to justify filing their defamation action, given that they lacked substantial evidence of actual malice. That was a valid and telling point, in our view, because the existence of a good faith belief in the merits of their lawsuit was the "special circumstance" on which appellants relied.

---

[16] *See id.* at 575.

Judge Epstein's "special circumstances" analysis took into account the evidence of appellees' negligence and appellants' motivation to protect their reputations. That evidence may (or may not) have been relevant, but the judge correctly did not treat it as sufficient or dispositive. We held in *Doe* that the presumption in favor of an award of attorney fees applies even when the lawsuit is not a "classic" SLAPP suit that "has been determined to be frivolous or intended to stifle speech by causing undue litigation costs."[17] *Doe* characterized the distinction between "classic" SLAPP suits and others as "illusory" and explained that a showing of bad faith or improper motive is not a prerequisite to the recovery of attorney fees.[18] A showing of good faith and proper motive therefore falls short of meeting a plaintiff's burden to show special circumstances warranting the denial of a fee award to a defendant whose special motion to dismiss has been granted.[19]

---

[17] *Id.* at 573.

[18] *Id.* at 574.

[19] In *Doe*, this court based the special circumstances exception on case law governing the award of attorney fees in litigation under the federal Civil Rights Acts pursuant to 42 U.S.C. § 1988(b). *See id.* at 577 (stating that "a prevailing plaintiff under Title II of the Civil Rights Act of 1964 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust'" (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968))). In practice, very few circumstances have been found to constitute "special circumstances" in civil rights cases. The plaintiff's good faith is not one of them. *See, e.g., Turner v. D.C. Bd. of*

Appellants take issue with some of the other factors the judge considered, perhaps out of an abundance of caution, in determining that special circumstances were absent in this case — not only appellants' critical lack of substantial evidence of actual malice, but also that granting the special motion to dismiss was not a "close call"; that appellants' "aggressive litigation tactics" forced appellees to incur "very substantial costs to defend themselves against allegations that [appellants] could not prove"; and that appellants possessed the ability to pay a fee award. But while those additional factors may have had little or no bearing on whether special circumstances made a fee award unjust, the judge did not abuse his discretion in considering them and concluding that they did not support such a determination; they merely

---

*Elections & Ethics*, 354 F.3d 890, 897 (D.C. Cir. 2004) (explaining that "because an award of attorney's fees under § 1988 is not meant as a punishment for bad defendants who resist plaintiffs' claims in bad faith, but is meant to compensate civil rights attorneys who bring civil rights cases and win them," the defendant's lack of "fault" or good faith "is not a special circumstance warranting denial of a fully compensatory fee" (citations, internal quotation marks, and brackets omitted)); *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 201 (1st Cir. 2009) (stating that "a defendant's good faith is 'by itself not a special circumstance justifying a denial of attorney's fees'" and neither is "a defendant's 'good faith reliance even on settled law'" (citations omitted)); *Lampher v. Zagel*, 755 F.2d 99, 104 (7th Cir. 1985) (holding that defendants' "good faith enforcement" of the challenged statute did not constitute a special circumstance because "the good faith of the defendant[s] is irrelevant because 'the key issue is the provocative role of the plaintiffs' lawsuit, not the motivation of the defendant'" (alteration in original) (citation omitted)).

underscored appellants' failure to show the existence of any special circumstances.[20]

We see no indication that the judge considered those factors inappropriately.[21]

Although appellants did not dispute the reasonableness of the fees and other costs incurred by appellees, Judge Epstein reviewed appellees' submission and discerned that defense counsel's work was "useful and necessary for the successful result that they achieved."[22]  Appellants do not challenge that finding on appeal.

---

[20] We note that courts have held that a losing civil rights defendant's inability to pay the award, and the closeness of the case, are not special circumstances justifying the denial of attorney fees to a prevailing plaintiff. *See, e.g.*, *Inmates of Allegheny Cnty. Jail v. Pierce*, 716 F.2d 177, 179-80 (3d Cir. 1983) (recognizing that a "losing party's financial ability to pay is not a 'special circumstance'" under 42 U.S.C. § 1988(b)); *Cleveland v. Ibrahim*, 121 F. App'x 88, 91 (6th Cir. 2005) (concluding that "closeness or difficulty of a case," in a civil rights action under 42 U.S.C. § 3613(c)(2), does not constitute a "'special circumstance' which can defeat an attorney's fee award altogether").

[21] Appellants object to the judge's characterization of their litigation tactics as "aggressive." We do not perceive that comment as pejorative or improper. (Lawyers usually take such descriptions as compliments.)  The judge merely mentioned it as the reason appellees' defense costs were "very substantial."  Appellants do not dispute the reasonableness of those costs.

[22] *See Vining v. District of Columbia*, 198 A.3d 738, 755 (D.C. 2018) ("The central question [in evaluating the reasonableness of a fee request] is whether the work was useful and necessary in advancing the litigation to its successful conclusion." (citation and alteration omitted)).

We are satisfied that Judge Epstein exercised his discretion appropriately and did not err in determining that the Anti-SLAPP Act entitled appellees to their requested award of attorney fees and other costs of the litigation. Before we discuss the subsequent award of "fees on fees," we think it best to address appellants' objections to the constitutionality of the awards and the Superior Court's statutory authority to make them under D.C. Code § 11-946, to which we now turn.

## III. The Constitutionality of D.C. Code § 16-5504(a)

Appellants contend that D.C. Code § 16-5504(a), as construed in *Doe*, is unconstitutional on its face and as applied to them in this case. They argue that the Anti-SLAPP Act's authorization of fee awards to prevailing defendants places an undue burden on plaintiffs' First Amendment right "to petition the Government for a redress of grievances."[23] Appellants assert that "unless a lawsuit was frivolous or brought in bad faith, it is deserving of First Amendment protection" and no fees should be awarded to prevailing defendants.

---

[23] U.S. Const. amend I.

We review a challenge to the constitutionality of a statute de novo.[24]  For the following reasons, we reject appellants' argument.

There is no question that "filing a complaint in court is a form of petitioning activity,"[25] and that "the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes."[26]  However, "baseless litigation is not immunized by the First Amendment right to petition."[27]  "The right to petition protected by the First Amendment does not include the right to maintain groundless proceedings."[28]  We understand a lawsuit to be "objectively baseless" if a "reasonable litigant could [not] realistically expect success on the merits."[29]

---

[24] *In re Warner*, 905 A.2d 233, 237 (D.C. 2006).

[25] *McDonald v. Smith*, 472 U.S. 479, 484 (1985).

[26] *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011).

[27] *McDonald*, 472 U.S. at 484 (quoting *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983)).

[28] *Larsen v. Comm'r*, 765 F.2d 939, 941 (9th Cir. 1985).

[29] *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60 (1993).  Thus, the class of "objectively baseless" lawsuits is not strictly limited to suits that are frivolous or in bad faith.  Appellants have cited no case holding that *only* frivolous or bad faith suits are outside the protection of the Petition Clause.

Just such a determination is the necessary predicate for a fee award to a prevailing defendant under § 16-5504(a), and it was the predicate for the award in this case. Section 16-5504(a) authorizes fee awards to defendants only when the court has determined, in granting a special motion to dismiss, that the plaintiff is unable to show the claim is likely to succeed on the merits.[30] The standard applied to evaluate the likelihood of success is designed to "weed[] out meritless litigation" and effectively requires a finding of objective baselessness, inasmuch as the court may grant the special motion only if it concludes that the claimant could not prevail as a matter of law.[31] In the present case, the court dismissed appellants' defamation claim because they presented no evidence "capable of showing by the clear and

---

Even in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the case on which appellants have relied, the Court held that, in an action under Title VII of the Civil Rights Act of 1964, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, *unreasonable, or groundless*, or that the plaintiff continued to litigate after it clearly became so," or that the plaintiff "brought or continued such a claim in *bad faith*," *id.* at 422 (first emphasis added). (We note, moreover, that this was not a constitutional holding, but rather was one specific to the statute at issue.)

[30] *See* D.C. Code § 16-5502(b).

[31] *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1232-33, 1236 (D.C. 2016).

convincing standard that appellees acted with actual malice."[32] A reasonable litigant cannot realistically expect success on the merits without having a likelihood of proving an essential component of the claim.

Section 16-5504(a) cannot be said to infringe the Petition Clause, on its face or as applied, merely on account of the burden it imposes on the assertion of claims that are outside the protection of the Petition Clause. Nor does a fee-shifting statute like § 16-5504(a) deprive any would-be plaintiff of the right to file suit or erect a barrier (such as a filing fee or other precondition) that might prevent a claimant from filing as a practical matter.[33] Appellants argue, however, that the risk of fee awards to prevailing defendants unduly burdens the right to petition by discouraging the assertion of some claims that are not necessarily baseless. The fee-shifting statute did not discourage appellants from asserting any claim in this case. We therefore do not see how appellants can argue that the statute was unconstitutional in its

---

[32] *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 511 (D.C. 2020).

[33] *Cf. Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 741 (D.C. Cir. 2011) (explaining that while "government interfere[nce] with *the plaintiffs' ability to express their views* to a decisionmaker" may burden the Petition Clause, a circumstance where the government "instead interfered with *the decisionmaker's ability to grant the remedy* the plaintiffs seek" does not because "[n]o case holds that [the latter] kind of interference — whether with rights or remedies — abridges the Petition Clause.").

application to them. Nonetheless, appellants may assert a facial challenge based on the statute's chilling effect on other defamation plaintiffs' First Amendment rights.[34]

Just as a statute awarding fees to a successful plaintiff may "encourage the bringing of low-probability cases," we suppose that a statute awarding fees to a successful defendant may "discourage litigation with a low chance of success."[35] (By the same token, we suppose fee-shifting statutes also may affect a defendant's calculus in deciding whether to assert a dubious defense.) But even if a fee-shifting provision can be said to "burden" the exercise of the right to petition by discouraging plaintiffs from asserting claims of questionable merit, that does not mean the burden is undue or so interferes with exercise of the right as to be unconstitutional. Although the contours of the Petition Clause are not clearly defined, some encroachment on the right to petition — particularly when regulations do not directly

---

[34] *See, e.g.*, *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (recognizing that litigants may raise First Amendment challenges based on the argument that "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"); *Grogan v. United States*, 271 A.3d 196, 210 (D.C. 2022) (discussing the same in the context of First Amendment overbreadth challenges).

[35] *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 373 (7th Cir. 1987).

impair the right to *access* the court — is permissible if it effectuates important interests of the government.[36]

The Council unquestionably had significant reasons for enacting the Anti-SLAPP Act's fee-shifting provision that are consistent with longstanding and widespread practices throughout the United States. Discouraging the filing of meritless lawsuits, and requiring those who do file them to compensate defendants for the costs such lawsuits unjustifiably impose on them, are reasonable and legitimate policy goals. Innumerable other fee-shifting statutes have been enacted to achieve those very goals by requiring losing parties, including losing plaintiffs, to

---

[36] *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 389-92 (2011) (adopting standards from the Speech Clause context and weighing the "substantial government interests" of restraining speech of government employees against employees' right to litigate all grievances against their employer); *McDonald v. Smith*, 472 U.S. 479, 484-85 (1985) (rejecting the proposition that the right to petition is absolute and applying the actual malice standard to statements made in letters to government officials); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (recognizing that the threat of antitrust liability "and the attendant treble damages . . . far more significantly chills the exercise of the right to petition than does the mere shifting of attorney's fees" in patent suits); *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 530 (2002) (suggesting that "one might assume that any concerns related to the right to petition must be greater when enjoining ongoing litigation than when penalizing completed litigation"); *see also* Carol Rice Andrews, *A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right*, 60 Ohio St. L.J. 557, 671-73, 678-79 (1999).

pay the legal fees incurred by the prevailing parties, including prevailing defendants.[37] There is no serious question about the constitutionality of such statutes; indeed, the Seventh Circuit has described "the proposition that the [F]irst [A]mendment, or any other part of the Constitution, prohibits or even has anything to say about fee-shifting statutes in litigation" as "too farfetched to require extended analysis."[38] Rather, as the Supreme Court has said, "it is apparent that the circumstances under which attorneys' fees are to be awarded" in litigation under federal law "and the range of discretion of the courts in making those awards are

---

[37] *See, e.g.*, *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-54 (2010) (describing the variety of "prevailing party" fee-shifting provisions that the Supreme Court has considered).

[38] *Premier Elec. Const.*, 814 F.2d at 373 (footnote omitted). The court went on to explain:

> Fee shifting requires the party that creates the costs to bear them. This is no more a violation of the [F]irst [A]mendment than is a requirement that a person who wants to publish a newspaper pay for the ink, the paper, and the press. Similarly, whoever wants to read the *New York Times* must buy a copy. The exercise of rights may be costly, and the [F]irst [A]mendment does not prevent the government from requiring a person to pay the costs incurred in exercising a right.

*Id.* (citations and footnote omitted).

matters for Congress to determine"[39]; and it is for state legislatures to determine those matters in litigation under state law.

The Anti-SLAPP Act's fee-shifting provision also serves an important purpose beyond simply compensating defendants for litigation expenses they should not have had to bear.  The provision furthers the Act's fundamental goal of protecting "the right to free speech guaranteed by the First Amendment . . . by shielding defendants from meritless litigation that might chill advocacy on issues of public interest."[40]  Legislatures across the country have enacted Anti-SLAPP statutes based on documented evidence that SLAPPs endanger First Amendment rights.[41]  In contrast, we are aware of no evidence supporting appellants' hypothesis that Anti-SLAPP statutes discourage the filing of meritorious claims — especially where, as

---

[39] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 262 (1975).

[40] *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1231 (D.C. 2016).

[41] *See* George W. Pring, *SLAPPs: Strategic Lawsuits against Public Participation*, 7 Pace Env't. L. Rev. 3, 3-5 (1989) (describing data showing that SLAPP "cases are not isolated or localized aberrations, but are found in every state, every government level, every type of political action, and every public issue of consequence," and they "strike at a wide variety of traditional American political activities"); *Anti-SLAPP Legal Guide*, Reporters Committee for Freedom of the Press, https://www.rcfp.org/anti-slapp-legal-guide/; https://perma.cc/5WVF-9RU3 (last visited Apr. 4, 2023) ("In recent years, several states have adopted or amended their anti-SLAPP laws.  As of October 2022, 32 states and the District of Columbia have anti-SLAPP laws . . . .").

is the case here, the Anti-SLAPP statute's fee-shifting provision leaves some discretion to the trial court not to award attorney fees. As we have noted, the District's Anti-SLAPP Act did not discourage appellants themselves.

As fee-shifting provisions go, §16-5504(a) is unexceptional and, in fact, is comparatively modest, as it does not provide for awards to defendants in all cases in which they prevail, but only in those cases in which the court (in granting a special motion to dismiss) finds that the plaintiffs' claims were unsubstantiated and legally insufficient. In addition, the Anti-SLAPP Act provides for the court to determine a defendant's entitlement to a fee award at an early stage of the litigation, so as to reduce the recoverable expenses that the defendant needs to incur in a SLAPP.[42] Thus the award allowed by § 16-5504(a) is significantly lower than it would be if made after the defendant had prevailed at a later stage, e.g., after a trial.[43]

---

[42] A special motion to dismiss must be filed within 45 days after service of the claim. D.C. Code § 16-5502(a).

[43] The Anti-SLAPP Act does not provide for fee awards to defendants who prevail at later stages of a lawsuit; a defendant who prevails after trial would be eligible for a fee award only upon a showing of bad faith or in unusual circumstances. *See Doe v. Burke*, 133 A.3d 569, 584 (D.C. 2016) (McLeese, J., concurring in part and dissenting in part).

In light of the foregoing considerations, we readily conclude that § 16-5504(a) imposes no undue burden on the First Amendment right to petition for redress of grievances. We hold that the statute is constitutional on its face and was constitutionally applied to appellants.[44]

---

[44] We note that courts in other jurisdictions, including California and Texas where fee-shifting is *required* for successful movants of the motion to dismiss, *see* Cal. Civ. Proc. Code § 425.16(c)(1); Tex. Civ. Prac. & Rem. § 27.009(a)(1), have rejected constitutional challenges to similar fee-shifting provisions in their state Anti-SLAPP statutes. *See, e.g.*, *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 689-92 (Cal. 2002) (holding that fee shifting under the Anti-SLAPP statute without a showing of the plaintiff's "intent to chill" free speech did not violate the Constitution or "inappropriately punish plaintiffs," especially given that a plaintiff is burdened by payment of attorney fees "only when the plaintiff burdens free speech with an unsubstantiated claim"); *Bernardo v. Planned Parenthood Fed'n of Am.*, 9 Cal. Rptr. 3d 197, 229-30 (Cal. Ct. App. 2004) (concluding that fee-shifting provision did not violate the right to petition and explaining that "[plaintiffs'] arguments are based on the unsupported premise that the anti-SLAPP statute's fee shifting provisions 'penalize' or impose 'liability' on plaintiffs whose complaints are dismissed"); *Vargas v. City of Salinas*, 134 Cal. Rptr. 3d 244, 260 (Cal. Ct. App. 2011) ("If the [fee-shifting provision] chills legitimate petitioning activity, it is merely incidental to and outweighed by the significant governmental interests the statute is designed to protect."); *Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 650 (Tex. Ct. App. 2020) (recognizing that the Anti-SLAPP statute's fee-shifting provision is constitutional and does "not create an impermissible pay-to-play barrier to the courts; the awards shift litigation costs after resolution of a claim"); *Day v. Farrell*, No. 97-2722, 2000 WL 33159180, at *2-3 (R.I. Super. Ct. May 15, 2000) (concluding that the Anti-SLAPP statute's fee-shifting provision does not violate the Constitution because it acts as a "reasonable limit[] or burden[]" on the right to access the courts, and "the provision fosters the Legislature's express objective of disfavoring SLAPP suits" and resolving such litigation "quickly with

## IV. Compliance with D.C. Code § 11-946

D.C. Code § 11-946 provides that "[t]he Superior Court shall conduct its business according to the Federal Rules of Civil Procedure" unless this court has approved a modification of those Rules.[45]  Appellants invoked this provision for the first time after this court upheld the Superior Court's judgment granting the special motion to dismiss appellants' defamation action.  They then argued that the Anti-SLAPP Act's special motion to dismiss and fee-shifting provisions modify the Federal Rules of Civil Procedure dealing with motions to dismiss or for summary judgment and with fee awards (which are incorporated in the Superior Court's rules),

---

minimum cost to citizens who have participated in matters of public concern" (citation omitted)).

[45] Section 11-946 reads as follows:

> [t]he Superior Court shall conduct its business according to the Federal Rules of Civil Procedure . . . unless it prescribes or adopts rules which modify those Rules. Rules which modify the Federal Rules shall be submitted for the approval of the District of Columbia Court of Appeals, and they shall not take effect until approved by that court.  The Superior Court may adopt and enforce other rules as it may deem necessary without the approval of the District of Columbia Court of Appeals if such rules do not modify the Federal Rules.

and that the Superior Court was not authorized to apply those modifications because this court had not (and still has not) approved them.

Judge Epstein rejected appellants' arguments. He held that appellants' objection to the special motion to dismiss procedure based on § 11-946 was untimely, since appellants had not raised it when they had litigated the propriety of that motion and its application to them. And the judge held that the fee-shifting provision of the Anti-SLAPP Act provides a substantive remedy and does not modify the procedure under the Federal (and Superior Court) Rules of Civil Procedure for requesting litigation costs and fees. The judge's rulings raise purely legal questions of statutory interpretation and procedure, as to which our review is de novo.

We affirm the denial of appellants' objections essentially for the reasons Judge Epstein stated. First, although the argument that the Anti-SLAPP Act's special motion to dismiss procedure modified the applicable Federal Rules of Civil Procedure was available to appellants,[46] they did not make that argument when they

---

[46] In *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015), the Circuit Court held that a federal court exercising diversity jurisdiction over a complaint under the District of Columbia Anti-SLAPP Act must apply the

opposed the special motion in Superior Court or when they took their appeal from the grant of the special motion to this court. Appellants thereby forfeited the argument.[47] We see no reason to excuse the forfeiture, particularly since it would

---

standards for granting pre-trial judgment to defendants set forth in Federal Rules of Civil Procedure 12 and 56 instead of the Act's special motion to dismiss provision, because that provision conflicts with those Rules "by setting up an additional hurdle a plaintiff must jump over to get to trial"). And in *Mann*, this court "agree[d] with *Abbas* that the special motion to dismiss is different from summary judgment [under Federal Rule 56] in that it imposes the burden on plaintiffs and requires the court to consider the legal sufficiency of the evidence presented before discovery is completed." 150 A.3d at 1238 n.32.

[47] *See Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1215 (D.C. 2002) ("[I]t is a general principle of appellate practice that 'where an argument could have been raised on an initial appeal, it is inappropriate to consider the argument on a second appeal following remand.'" (quoting *Hartman v. Duffey*, 88 F.3d 1232, 1236 (D.C. Cir. 1996))); *Fleming v. Carroll Publ'g Co.*, 621 A.2d 829, 837 (D.C. 1993) (same); *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1089-90 (D.C. Cir. 1984) ("Adherence to the rule that a party waives a 'contention that could have been but was not raised on a prior appeal' is, of course, necessary to the orderly conduct of litigation. Failure to follow this rule would lead to the bizarre result, as stated admirably by Judge Friendly, 'that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" (brackets omitted) (first quoting *Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982); and then quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981))). It makes no difference that this court simply affirmed the Superior Court's judgment granting the special motion to dismiss, *see Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 513 (D.C. 2020), and did not formally remand the case to the Superior Court for the subsequent fee award proceedings; the proceedings on appellees' motion for a fee award were already pending there and had been held in abeyance because they depended on our decision as to whether the special motion to dismiss was properly granted.

have been fairer to appellees to raise the procedural issue when appellants opposed their special motion to dismiss instead of holding it in reserve and raising it in piecemeal fashion.

Second, we agree with the Superior Court that the fee-shifting provision of the Anti-SLAPP Act in § 16-5504(a) provides a substantive remedy without effecting a modification of the Federal Rules of Civil Procedure.[48] Section 16-5504(a) is one of many statutes authorizing fee awards to prevailing parties. The court could not award fees without such statutory authorization, because "this jurisdiction follows the American Rule under which every party to a case shoulders its own attorneys' fees, and recovers from other litigants *only in the presence of*

---

[48] In addressing this question, we follow the usual rules of construction in interpreting the statute and its effect on the Rules of Procedure. "The initial step in statutory interpretation is to 'first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning' while construing the words in their 'ordinary sense and with the meaning commonly attributed to them.'" *Dobyns v. United States*, 30 A.3d 155, 159 (D.C. 2011) (quoting *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc)). If a statute's "language is 'plain' and allows for no other meaning, we will generally look no further and give the 'words used the meaning ordinarily attributed to them.'" *Whitfield v. United States*, 99 A.3d 650, 656 (D.C. 2014) (citation omitted). We may also consider the "statutory context and structure" and "evident legislative purpose." *Lumen Eight Media Grp., LLC v. District of Columbia*, 279 A.3d 866, 874 (D.C. 2022) (quoting *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020)).

*statutory authority*, a contractual arrangement, or certain narrowly-defined common law exceptions such as the conventional bad faith exception."[49]  But in allowing the court to grant the substantive remedy of a fee award, the Anti-SLAPP Act does not purport to mandate the procedure that the parties and the court must follow for that purpose.

Thus, the fee-shifting provision of the Anti-SLAPP Act plainly does nothing to modify the procedure set forth in the Federal Rules of Civil Procedure for requesting and obtaining a statutorily authorized award of litigation costs.  The applicable procedure is specified in Rule 54(d).[50]  Appellees followed that procedure, set out in the corresponding Superior Court Civil Rule 54(d), to move for litigation costs, including attorney fees, as authorized by § 16-5504(a).

---

[49] *Oliver T. Carr Co. v. United Techs. Commc'ns Co.*, 604 A.2d 881, 883 (D.C. 1992) (emphasis added) (citation, internal quotation marks, and alterations omitted).

[50] *See* Fed. R. Civ. P. 54(d)(2)(A), (B) ("A claim for attorney's fees and related nontaxable expenses must be made by motion . . . [and] the motion must . . . specify the judgment and the statute, rule, or other grounds entitling the movant to the award"); *see also* Fed. R. Civ. P. 54(d)(2) advisory committee's note to 1993 amendment ("[Rule 54(d)(2)] establishes a *procedure* for presenting claims for attorneys' fees" (emphasis added)).

Appellants argue that § 16-5504(a) effects a modification of the procedures set forth in Federal Rule of Civil Procedure 11 for the imposition of sanctions. Appellants are mistaken. While fee-shifting statutes like § 16-5504(a) are aimed at compensating prevailing parties in certain types of cases, Rule 11 complements such statutes by providing sanctions to deter certain improper conduct in litigation. Rule 11 requires attorneys to conduct a reasonable inquiry and certify in each filing that their legal assertions are warranted, their factual contentions have or are likely to have evidentiary support, and their filing is "not being presented for any improper purpose."[51] If any of those representations are deemed improper, courts may impose sanctions.[52] The "central purpose of Rule 11 is to deter baseless filings."[53] Although the Anti-SLAPP Act likewise seeks to deter meritless lawsuits,[54] the similarities between the statute and Rule 11 end there.

---

[51] *See* Fed. R. Civ. P. 11(a), (b).

[52] *See* Fed. R. Civ. P. 11(c).

[53] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[54] Even so, the Anti-SLAPP Act is aimed at protecting the First Amendment whereas Rule 11 is "aimed at curbing abuses of the judicial system." *Id.* at 397; *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991) ("The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses.").

Rule 11 probes the representations made in a "specific filing," which is "not tied to the outcome of litigation."[55] If (among the many options available) monetary sanctions are appropriate, they do not "shift the entire cost of litigation; they shift only the cost of a discrete event" in the course of the litigation.[56] "[O]rdinarily," such sanctions should be paid to the court and, only "under unusual circumstances," be paid directly to the other party.[57] Section 16-5504(a), by contrast, applies only after the court has determined that the entire litigation must end because the plaintiff is not likely to succeed on the merits of the lawsuit. The fees awarded under the Anti-SLAPP Act compensate the "moving party" — not the court — for the "costs of litigation,"[58] not the costs incurred in connection with a "discrete event" in the litigation. Indeed, the advisory committee's note to the 1993 amendment to Rule 11 acknowledges the potential for overlap between fee-shifting provisions and Rule 11. The note instructs courts not to apply Rule 11 in a way that is "inconsistent" with or will "supplant statutes permitting awards of attorney's fees to prevailing parties or

---

[55] *Bus. Guides*, 498 U.S. at 553.

[56] *Id.*

[57] Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

[58] D.C. Code § 16-5504(a).

alter the principles governing such awards."[59]  Thus, Rule 11 does not displace the Anti-SLAPP Act's fee shifting.  Nor does it provide the procedure for fee awards authorized by a statute; it is Rule 54 that addresses that procedure.

## V. The Award of "Fees on Fees"

Appellants' final challenge is to the trial judge's award to appellees of the costs and attorney fees they incurred in applying for their initial fee award.  We review for abuse of discretion and affirm.

Appellants argue that the trial judge erroneously "constrained [his] own discretion by applying a presumption in favor of fees on fees" and by requiring appellants to show the existence of special circumstances rendering the supplemental award unjust to overcome that presumption.  We disagree.  The presumption in favor of awarding fees to prevailing defendants in Anti-SLAPP cases that this court held

---

[59] Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("In cases brought under statutes providing for fees to be awarded to prevailing parties, the court should not employ cost-shifting under this rule in a manner that would be inconsistent with the standards that govern the statutory award of fees, such as stated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).").

applicable in *Doe* applied to the request for fees on fees, and the judge reasonably concluded that appellants did not overcome it.

"The law is well established that, when fees are available to the prevailing party, that party may also be awarded fees on fees, *i.e.*, the reasonable expenses incurred in the recovery of its original costs and fees."[60]  Indeed, in *Doe v. Burke*, where we remanded the case to the trial court to determine a reasonable fee award to a prevailing defendant under the Anti-SLAPP Act, we specified that the trial court would also "have to assess the reasonableness of the fee amount that [the defendant] has indicated it will seek for attorney work subsequent to the original fee request — so-called 'fees on fees.'"[61]  A supplemental request for the additional fees and costs reasonably incurred to recover the initial award does not normally require an additional showing of entitlement.  Illustratively, we held in *General Federation of Women's Clubs* that where the trial court had awarded the defendant fees based on the plaintiff's bad faith conduct in the litigation, the court could award the costs of recovering those fees as well without having to find additional bad faith conduct by

---

[60] *Gen. Fed'n of Women's Clubs v. Iron Gate Inn, Inc.*, 537 A.2d 1123, 1129 (D.C. 1988).

[61] 133 A.3d 569, 579 (D.C. 2016).

the plaintiff; "[b]ad faith in the litigation of the underlying action," we said, "is sufficient to support shifting the costs of the fee recovery proceeding itself."[62] So too in the present case the trial judge's earlier determination that special circumstances did not exist to deny the initial fee motion was sufficient to support the award of fees on fees. Hence, it was within the judge's discretion to grant appellees' request for that supplemental award without further justification.

Appellants argue that the additional fee award unjustly punished them for asserting legal challenges, which they characterize as novel and important, in opposition to appellees' original fee request. The judge rejected this argument because, he said, the existence of "[a] reasonable basis for plaintiffs' arguments against the award does not mean that defendants are not entitled to the litigation costs they incurred to successfully rebut those arguments." Regardless of whether appellants' arguments were novel, important, or particularly persuasive, we think the judge was correct; that appellants may have had reasonable arguments against a fee award did not make the award unjust. And it would make it too easy to overcome the Anti-SLAPP Act's statutory presumption in favor of an award if it were otherwise.

---

[62] 537 A.2d at 1130.

Appellants do not dispute the reasonableness of the fees and costs that appellees incurred to obtain their initial fee award. We have no reason to disturb the trial judge's conclusion that appellees' supplemental request for $29,807.50 was reasonable.

## VI.

For the foregoing reasons, we affirm the order granting appellees' initial request pursuant to D.C. Code § 16-5504(a) for litigation costs, including attorney fees, incurred in connection with their successful special motion to dismiss under the Anti-SLAPP Act, and we affirm the order granting appellees' request for costs and fees incurred to prepare and litigate their initial request for fees and costs.